1

2

3

4

5

6

7

8                        IN THE UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JACQUELINE M. TAYLOR,

11              Plaintiff,                    No. 2:11-cv-0603-KJN PS

12        vs.

13   STATE OF CALIFORNIA
     EMPLOYMENT DEVELOPMENT
14   DEPARTMENT,

15              Defendant.                    ORDER

16   _____/

17              Plaintiff Jacqueline Taylor, proceeding without counsel, originally filed this action

18   on March 4, 2011.  (Dkt. No. 1.)[1]  Although plaintiff's original complaint named numerous

19   defendants, her operative second amended complaint lists the State of California Employment

20   Development Department ("EDD") as the only named defendant.  (Dkt. No. 18.)  The second

21   amended complaint seeks money damages for defendant EDD's alleged violations of Title I of

22   the federal Americans with Disabilities Act ("ADA") and California's Fair Employment and

23   Housing Act ("FEHA"), and thus invokes the court's federal question and supplemental

24   _____

25        [1]  All remaining parties have consented to the jurisdiction of a magistrate judge pursuant
     to 28 U.S.C. § 636(c), and the case was referred to the undersigned for all further proceedings
26   and entry of final judgment.  (Dkt. Nos. 5, 26, 29.)

                                              1

1    jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1367.  (Id.)

2           Presently pending before the court is defendant EDD's motion for summary

3    judgment, or in the alternative, summary adjudication, which was filed on February 15, 2013,

4    and noticed for hearing on March 21, 2013.  (Dkt. No. 40.)  On March 7, 2013, plaintiff filed a

5    timely opposition to defendant EDD's motion, and on March 12, 2013, defendant EDD filed a

6    reply brief.  (Dkt. Nos. 45, 46.)  At the March 21, 2013 hearing, plaintiff Jacqueline Taylor

7    appeared without counsel and attorney Noreen Skelly appeared on behalf of defendant EDD.

8    (Dkt. No. 49.)

9           After considering the parties' briefing, the parties' oral argument, appropriate

10   portions of the record, and the applicable law, the undersigned grants defendant EDD's motion

11   and dismisses plaintiff's claims without prejudice.

12   BACKGROUND

13          The background facts, disputed and undisputed, are primarily taken from

14   plaintiff's operative second amended complaint.  (See Second Amended Complaint for Damages,

15   Dkt. No. 18 ["SAC"].)[2]  Plaintiff was originally employed by defendant EDD as a Program

16   Technician II ("PT II") in EDD's Tax Branch in Sacramento, California.  (Id. at 1.)  In December

17   2007, plaintiff applied for and received a Disability Insurance Program Representative ("DIPR")

18   position in defendant EDD's Fresno, California office.  (Id.)  Plaintiff began working as a DIPR

19   in Fresno around January 7, 2008.  (Id.)

20          Shortly after plaintiff started working in Fresno, she began to experience medical

21   symptoms "correlated to her presence in Fresno."  (SAC at 2.)  In particular, plaintiff stated that

22

23       [2] Defendant EDD submitted a proposed statement of undisputed material facts in support
24   of its motion for summary judgment, and plaintiff made some attempts to dispute portions of
     these proposed facts, at least in a global sense.  (Dkt. Nos. 42, 45-2.)  For the reasons discussed
25   below, defendant EDD's motion can be resolved on legal grounds, regardless of any dispute as to
     a material fact(s).  Accordingly, for background purposes only, and without making any factual
26   findings, the court outlines the facts alleged in plaintiff's operative second amended complaint.

1  the bad air and allergens in the area exacerbated her asthma and hypertensive condition, which

2  resulted in difficulty breathing and anxiety/panic attacks.  (Id.)  Around January 15, 2008,

3  plaintiff requested to be transferred to an EDD Disability Insurance Office closer to her home in

4  Vallejo, California, and submitted medical documentation in support of her request.  (Id.)

5  Around April 18, 2008, defendant EDD denied plaintiff's request and presented her with two

6  options: (a) to resume her work as a DIPR in Fresno or (b) to return to work in Sacramento in a

7  PT II position.  (Id.)  Plaintiff ultimately agreed, "under duress," to return to Sacramento to work

8  in the PT II position.  (Id.)  According to plaintiff, she was also given a personal air purifier, but

9  it proved to exacerbate her symptoms.  (Id. at 2, 4.)

10          Subsequently, around August 19, 2009, plaintiff again requested a transfer to an

11  EDD office closer to her home in Vallejo, California, as well as an ergonomic work station.

12  (SAC 2-3.)  As grounds for the request, plaintiff stated that the "[s]edentary position and bus

13  ride, causes excruciating pain and swelling of my ankles, and legs.  Tingling and stiffness, pain

14  causes blood pressure elevation."  (Id.)  Plaintiff claims that even with relevant medical

15  documentation, including a diagnosis of lumbar radiculopathy and a physician's statement that

16  the commute from Vallejo to Sacramento was exacerbating plaintiff's lower back pain and other

17  symptoms, defendant EDD denied plaintiff's request.  (Id. at 3, 5.)  According to plaintiff,

18  defendant EDD did offer to provide plaintiff with the requested ergonomic equipment and to

19  allow her to work in a sitting or standing position, but plaintiff believed that EDD's offer was

20  nothing but an attempt to avoid litigation.  (Id. at 6-7.)  Plaintiff contends that she was effectively

21  forced to retire, because she was unable to keep working due to defendant EDD's failure to

22  reasonably accommodate her disability.  (Id. at 7.)

23          Plaintiff appealed denial of her accommodation requests to the State Personnel

24  Board ("SPB"), but those appeals were ultimately denied around January 4, 2011.  (SAC at 2;

25  ////

26  ////

3

1 | Dkt. No. 42 at 11, 18; Dkt. No. 44, Ex. 2 [copy of SPB decision][3]; Dkt. No. 45-1.)

2 | Consequently, on March 4, 2011, plaintiff filed the instant action in federal court.  (Dkt. No. 1.)

3 | As noted above, plaintiff's operative second amended complaint, filed on March 12, 2012,

4 | alleges that defendant EDD failed to reasonably accommodate plaintiff's disabilities and raises

5 | claims for violation of (1) Title I of the ADA, 42 U.S.C. §§ 12111 et seq. and (2) California's

6 | FEHA, Cal. Gov't Code §§ 12940 et seq.  (Dkt. No. 18.)  Defendant EDD answered the

7 | complaint on March 22, 2012.  (Dkt. No. 23.)

8 |       On May 25, 2012, the court entered a pretrial scheduling order requiring all

9 | discovery to be completed by March 15, 2013, all law and motion to be completed by May 16,

10 | 2013, and setting a pretrial conference and jury trial for August 22, 2013 and September 16,

11 | 2013, respectively.  (Dkt. No. 31.)  Thereafter, on February 15, 2013, in accordance with the

12 | scheduling order, defendant EDD filed the instant motion for summary judgment, or in the

13 | alternative, summary adjudication.  (Dkt. No. 40.)

14 | DISCUSSION

15 |       Summary Judgment Standard

16 |       Federal Rule of Civil Procedure 56(a) provides that "[a] party may move for

17 | summary judgment, identifying each claim or defense--or the part of each claim or defense--on

18 | which summary judgment is sought."  It further provides that "[t]he court shall grant summary

19 | judgment if the movant shows that there is no genuine dispute as to any material fact and the

20 |

21 |     [3] Defendant EDD has requested that the court take judicial notice of the SPB decision

22 | dated January 4, 2011.  (Dkt. No. 41.)  Plaintiff opposed the request, but does not dispute the existence of the decision – merely the propriety, finality, and legal effects of the decision.  (Dkt.

23 | No. 45-1.)  The court grants defendant EDD's request, because a court may take judicial notice of court filings and other matters of public record, which are not subject to reasonable dispute.

24 | Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006); Fed. R. Evid. 201(b).  However, by taking judicial notice of the *existence* of the SPB decision for background

25 | purposes, the court does not necessarily accept its factual findings, reasoning, and conclusions. Indeed, plaintiff strongly disputes the SPB decision's factual findings, reasoning, and

26 | conclusions.  Moreover, for the reasons discussed below, the SPB decision has no actual bearing on the court's resolution of defendant EDD's motion.

1  movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[4]  A shifting burden of

2  proof governs motions for summary judgment under Rule 56.  Nursing Home Pension Fund,

3  Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010).

4  Under summary judgment practice, the moving party

5              always bears the initial responsibility of informing the district court
             of the basis for its motion, and identifying those portions of "the
6            pleadings, depositions, answers to interrogatories, and admissions on
             file, together with the affidavits, if any," which it believes
7            demonstrate the absence of a genuine issue of material fact.

8  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P.

9  56(c)).  "Where the non-moving party bears the burden of proof at trial, the moving party need

10  only prove that there is an absence of evidence to support the non-moving party's case."  In re

11  Oracle Corp. Sec. Litig., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 325); see also Fed. R.

12  Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does

13  not have the trial burden of production may rely on a showing that a party who does have the trial

14  burden cannot produce admissible evidence to carry its burden as to the fact").

15          If the moving party meets its initial responsibility, the opposing party must

16  establish that a genuine dispute as to any material fact actually exists.  See Matsushita Elec.

17  Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986).  To overcome summary

18  judgment, the opposing party must demonstrate the existence of a factual dispute that is both

19  material, i.e., it affects the outcome of the claim under the governing law, see Anderson v.

20  Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Fortune Dynamic, Inc. v. Victoria's Secret Stores

21  Brand Mgmt., Inc., 618 F.3d 1025, 1031 (9th Cir. 2010), and genuine, i.e., "'the evidence is such

22  that a reasonable jury could return a verdict for the nonmoving party,'"  FreecycleSunnyvale v.

23  Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010) (quoting Anderson, 477 U.S. at 248).  A

24

25          [4]  Federal Rule of Civil Procedure 56 was revised and rearranged effective December 10,
    2010.  However, as stated in the Advisory Committee Notes to the 2010 Amendments to
26  Rule 56, "[t]he standard for granting summary judgment remains unchanged."

1    party opposing summary judgment must support the assertion that a genuine dispute of material

2    fact exists by: "(A) citing to particular parts of materials in the record, including depositions,

3    documents, electronically stored information, affidavits or declarations, stipulations . . . ,

4    admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do

5    not establish the absence or presence of a genuine dispute, or that an adverse party cannot

6    produce admissible evidence to support the fact."[5]  Fed. R. Civ. P. 56(c)(1)(A)-(B).  However,

7    the opposing party "must show more than the mere existence of a scintilla of evidence."  In re

8    Oracle Corp. Sec. Litig., 627 F.3d at 387 (citing Anderson, 477 U.S. at 252).

9          In resolving a motion for summary judgment, the evidence of the opposing party

10   is to be believed.  See Anderson, 477 U.S. at 255.  Moreover, all reasonable inferences that may

11   be drawn from the facts placed before the court must be viewed in a light most favorable to the

12   opposing party.  See Matsushita, 475 U.S. at 587; Walls v. Cent. Contra Costa Transit Auth., 653

13   F.3d 963, 966 (9th Cir. 2011).  However, to demonstrate a genuine factual dispute, the opposing

14   party "must do more than simply show that there is some metaphysical doubt as to the material

15   facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the

16   non-moving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 586-87 (citation

17   omitted).

18          Analysis

19          In its motion for summary judgment or summary adjudication, defendant EDD

20   argues that both plaintiff's federal claim under the ADA and plaintiff's state law claim under

21   California's FEHA are barred by the Eleventh Amendment to the United States Constitution.

22   Furthermore, in the event that the court finds that it has jurisdiction to adjudicate plaintiff's

23   FEHA claim, defendant EDD also contends that the FEHA claim is barred by the doctrine of res

24

25      [5] "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).  Moreover, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."

26   Fed. R. Civ. P. 56(c)(2).

1    judicata.  Each of plaintiff's claims is addressed separately below.

2                              Claim under Title I of the ADA, 42 U.S.C. §§ 12111 et seq.

3                  In her claim under Title I of the ADA, plaintiff asserts that defendant EDD, as her

4    employer, violated the ADA by not reasonably accommodating her disability and by failing to

5    appropriately engage in an interactive process with her to find a reasonable accommodation for

6    her disability.

7                  "The ADA contains five titles: Employment (Title I), Public Services (Title II),

8    Public Accommodations and Services Operated by Private Entities (Title III),

9    Telecommunications (Title IV), and Miscellaneous Provisions (Title V)."  Zimmerman v.

10   Oregon Dep't of Justice, 170 F.3d 1169, 1172 (9th Cir. 1999).  As the United States Supreme

11   Court noted, Title I of the ADA:

12                          prohibits certain employers, including the States, from
                            "discriminat[ing] against a qualified individual with a disability
13                          because of the disability of such individual in regard to job
                            application procedures, the hiring, advancement, or discharge of
14                          employees, employee compensation, job training, and other terms,
                            conditions, and privileges of employment."  §§ 12112(a),
15                          12111(2), (5), (7).  To this end, the Act requires employers to
                            "mak[e] reasonable accommodations to the known physical or
16                          mental limitations of an otherwise qualified individual with a
                            disability who is an applicant or employee, unless [the employer]
17                          can demonstrate that the accommodation would impose an undue
                            hardship on the operation of the [employer's] business."  §
18                          12112(b)(5)(A).

19   Bd. of Trustees of Univ. of Alabama v. Garrett, 531 U.S. 356, 360-61 (2001) ("Garrett").

20                 As noted above, defendant EDD contends that, regardless of any substantive

21   factual disputes concerning the reasonableness of any accommodations it provided to plaintiff,

22   plaintiff's claim under Title I of the ADA is barred by the Eleventh Amendment.  That argument

23   has merit.

24                 The Eleventh Amendment to the United States Constitution provides: "The

25   Judicial power of the United States shall not be construed to extend to any suit in law or equity,

26   commenced or prosecuted against one of the United States by Citizens of another State, or by

                                                  7

Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "Although by its terms the Amendment applies only to suits against a State by citizens of another State, [the U.S. Supreme Court has] extended the Amendment's applicability to suits by citizens against their own States." Garrett, 531 U.S. at 363. "The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." Id. In addition to states, state agencies also enjoy sovereign immunity under the Eleventh Amendment. Edelman v. Jordan, 415 U.S. 651, 663 (1974) ("When the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest"); Romano v. Bible, 169 F.3d 1182, 1185 (9th Cir. 1999).

Nevertheless, the U.S. Supreme Court has recognized that "Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority." Garrett, 531 U.S. at 363. In Garrett, the U.S. Supreme Court found that Congress unequivocally intended to abrogate the states' Eleventh Amendment immunity for suits under Title I of the ADA. Id. at 363-64; see also 42 U.S.C. § 12202 ("A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter"). However, the Court held that, by invoking its power under section 5 of the Fourteenth Amendment to enforce the Fourteenth Amendment's substantive guarantees, Congress had not validly abrogated the states' Eleventh Amendment immunity with respect to Title I of the ADA. Garrett, 531 U.S. at 374. The Court reasoned that, "in order to authorize private individuals to recover money damages against the States, there must be a pattern of discrimination by the States which violates the Fourteenth Amendment, and the remedy imposed by Congress must be congruent and proportional to the targeted violation." Id. After an extensive discussion, the Court noted that these requirements were not met, and that the states therefore remained immune from suit by private individuals for money damages under Title I of the ADA. Id.

1        In light of this binding authority, and regardless of the merits of plaintiff's

2   allegations and any substantive factual disputes, plaintiff's claim against defendant EDD for

3   money damages under Title I of the ADA is barred by the Eleventh Amendment.  Accordingly,

4   the court dismisses that claim without prejudice.  See Freeman v. Oakland Unified Sch. Dist.,

5   179 F.3d 846, 847 (9th Cir. 1999) ("The Eleventh Amendment is a limit on federal courts'

6   jurisdiction ... Dismissals for lack of jurisdiction should be ... without prejudice so that a plaintiff

7   may reassert his claims in a competent court").

8        In her opposition filings, plaintiff suggests that she has also stated federal claims

9   for disability discrimination against defendant EDD under Titles II and III of the ADA, as well as

10  Title VII of the Civil Rights Act of 1964.  (Dkt. Nos. 45, 45-2.)

11       As an initial matter, plaintiff's second amended complaint in fact only references

12  Title I of the ADA, and plaintiff cannot construct new claims without amending her complaint.

13  (See Dkt. No. 18.)  Indeed, plaintiff has not filed a motion for leave to amend her complaint, and

14  has not made a showing of good cause to modify the scheduling order and allow further

15  amendment of the complaint at this late juncture, especially given that the discovery cut-off date

16  of March 15, 2013, has already passed.  Although the court, especially in the case of pro se

17  litigants, generally liberally grants leave to amend in the earlier pleadings stage of the action, see

18  Fed. R. Civ. P. 15(a)(2), a pending motion for summary judgment to be decided after the

19  discovery period has already ended "weighs heavily" against allowing leave to amend.

20  Schlacter-Jones v. Gen. Tel. of California, 936 F.2d 435, 443 (9th Cir. 1991) (overruled in part

21  on other grounds in Cramer v. Consol. Freightways, Inc., 255 F.3d 683, 692 (9th Cir. 2001).  "A

22  motion for leave to amend is not a vehicle to circumvent summary judgment."  Id.

23       Moreover, even if the court were inclined to permit further amendment of the

24  complaint to allege such claims, such amendment would be futile.  In regards to Title II of the

25  ADA, the U.S. Supreme Court recognized that Congress had validly abrogated the states'

26  Eleventh Amendment immunity with respect to Title II of the ADA, at least when fundamental

1  rights or actual Fourteenth Amendment violations are involved.  See Tennessee v. Lane, 541 U.S.

2  509, 533-34 (2004) ("Title II, as it applies to the class of cases implicating the fundamental right

3  of access to the courts, constitutes a valid exercise of Congress' § 5 authority to enforce the

4  guarantees of the Fourteenth Amendment"); United States v. Georgia, 546 U.S. 151, 159 (2006)

5  ("[I]nsofar as Title II creates a private cause of action for damages against the States for conduct

6  that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign

7  immunity").  However, the Ninth Circuit Court of Appeals has held that Title II of the ADA only

8  pertains to discrimination in public services and programs of a public entity, and that actions

9  concerning employment disputes have to be brought solely under Title I of the ADA.

10  Zimmerman v. Oregon Dept. of Justice, 170 F.3d 1169, 1173 (9th Cir. 1999) ("Congress

11  unambiguously expressed its intent for Title II not to apply to employment").  Because plaintiff's

12  claims arise solely from her employment relationship with defendant EDD, she cannot state a

13  claim under Title II of the ADA.

14          For this same reason, plaintiff cannot state a claim under Title III of the ADA.

15  Moreover, a claim under Title III of the ADA is not viable against defendant EDD, because it is a

16  public entity, and not a private entity operating a public accommodation or service.  See 42

17  U.S.C. § 12181(6), (7); Disabled Rights Action Comm. v. Las Vegas Events, Inc., 375 F.3d 861,

18  876-77 (9th Cir. 2004).

19          Finally, plaintiff's allegations of discrimination based on disability do not qualify

20  her for protection under Title VII of the Civil Rights Act of 1964.  See 42 U.S.C. § 2000e-2(a),

21  (m) (providing protection on the basis of "race, color, religion, sex, or national origin"); Dotson

22  v. County of Kern, 2011 WL 902142, at *6 (E.D. Cal. Mar. 15, 2011).

23          In her response to defendant EDD's proposed statement of undisputed material

24  facts, plaintiff makes a cursory reference, without any further details, to "race related issues."

25  (Dkt. No. 45-2 at 2.)  However, even liberally construed, plaintiff's operative second amended

26  complaint does not state a claim for race discrimination; her allegations relate solely to defendant

1    EDD's failure to reasonably accommodate her disability.  (See generally Dkt. No. 18.)  Even if

2    plaintiff had requested leave to amend to assert a race-based claim, the court would not be

3    inclined to grant leave to amend to assert an entirely new theory of liability at this late stage of

4    the case, especially in light of the pending summary judgment motion, the fact that discovery has

5    already closed, plaintiff's delay in seeking such leave to amend, and the resulting prejudice to

6    defendant EDD.  Schlacter-Jones, 936 F.2d at 443.

7            At the hearing, plaintiff also suggested that the second amended complaint may

8    state a claim for age discrimination under Title VII of the Civil Rights Act of 1964, based on the

9    following allegations in the complaint:

> Despite Defendant's assertions that they would provide Plaintiff
> with the necessary accommodations they failed to do so and
> Plaintiff had no choice but to retire due to the fact that she could no
> longer work under those conditions.  Plaintiff believes that
> Defendant continued to take their time in accommodating Plaintiff
> because they believe that Plaintiff was nearing retirement age and
> would choose to retire than to continue working in such conditions.
> [sic] Defendant has essentially forced Plaintiff into retirement in an
> effort to avoid accommodating her.

15   (Dkt. No. 18 at 7.)  However, the court finds that these isolated statements regarding forced

16   retirement, based on defendant EDD's *alleged failure to accommodate plaintiff's disability*, do

17   not fairly put defendant EDD on notice of an age discrimination claim.  For the same reasons

18   discussed above, further leave to amend the complaint to state such a claim is not appropriate.

19   Moreover, such an amendment would be futile.  Age is not a protected basis under Title VII.  See

20   42 U.S.C. § 2000e-2(a), (m) (stating that Title VII provides protection on the basis of "race,

21   color, religion, sex, or national origin").  Additionally, any claim of age discrimination under the

22   Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq. ("ADEA") against defendant

23   EDD would also be barred by the Eleventh Amendment.  See Kimel v. Florida Bd. of Regents,

24   528 U.S. 62, 91-92 (2000) ("The ADEA's purported abrogation of the States' sovereign

25   immunity is ... invalid").

26   ////

1  <u>Claim under California's FEHA, Cal. Gov't Code §§ 12940 et seq.</u>

2          As noted above, plaintiff's operative second amended complaint also asserts a

3  claim for disability discrimination under California's FEHA.  Because there are no federal claims

4  remaining, the court declines to exercise supplemental jurisdiction over this state law claim.[6]  <u>See</u>

5  28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction

6  over a claim...if – the district court has dismissed all claims over which it has original

7  jurisdiction"); <u>see</u> <u>also</u> <u>Acri v. Varian Associates, Inc.</u>, 114 F.3d 999, 1000-01 (9th Cir. 1997)

8  ("'in the usual case in which all federal-law claims are eliminated before trial, the balance of

9  factors . . . will point toward declining to exercise jurisdiction over the remaining state-law

10  claims'"), <u>quoting</u> <u>Carnegie-Mellon University v. Cohill</u>, 484 U.S. 343, 350 n.7 (1988).  As such,

11  the court also dismisses plaintiff's FEHA claim without prejudice.

12          The court further notes that, even if it were to exercise supplemental jurisdiction

13  over plaintiff's FEHA claim, the ultimate result would be the same, because the Eleventh

14  Amendment also bars plaintiff's FEHA claim against defendant EDD in federal court.  This

15  conclusion is because the Eleventh Amendment applies to state law claims brought into federal

16  court under supplemental jurisdiction, and the State of California (and its agencies) have not

17  waived immunity for FEHA actions in federal court.  <u>Freeman</u>, 179 F.3d at 846-47.

18          Because the court declines to exercise jurisdiction over plaintiff's FEHA claim,

19  the court also does not reach defendant EDD's alternative argument that plaintiff's FEHA claim

20  is barred by the doctrine of res judicata.

21  <u>CONCLUSION</u>

22          In dismissing plaintiff's claims without prejudice, the court expresses no opinion

23  regarding the merits of plaintiff's claims, which plaintiff may be able to pursue in another court

24  ───────────────

25      [6] There is no plausible basis for diversity of citizenship jurisdiction, because plaintiff and
    defendant EDD are both citizens of California and there is thus no complete diversity for
26  purposes of 28 U.S.C. § 1332.

of competent jurisdiction, if viable.  The court merely holds that the Eleventh Amendment bars plaintiff from pursuing her claims in federal court.

          Accordingly, for the reasons outlined above, IT IS HEREBY ORDERED that:

          1.  Defendant State of California Employment Development Department's request for judicial notice (Dkt. No. 41) is GRANTED.

          2.  Defendant State of California Employment Development Department's motion for summary judgment, or in the alternative, summary adjudication (Dkt. No. 40) is GRANTED.

          3. Plaintiff's federal claim under Title I of the ADA and state law claim under California's FEHA are DISMISSED WITHOUT PREJUDICE.

          4. Judgment is entered for defendant State of California Employment Development Department.

          5. The Clerk of Court is directed to close this case and vacate all dates.

          IT IS SO ORDERED.

DATED:  March 22, 2013

                    _____
                    KENDALL J. NEWMAN
                    UNITED STATES MAGISTRATE JUDGE